Jose Martinez **MENDOZA**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 21516.

United States Court of Appeals
Fifth Circuit.

Aug. 9, 1966.

————◆————

Freeman M. Bullock (Court-appointed)
R. Richard Thornton, Houston, Tex., for
appellant.

James R. Gough, Asst. U. S. Atty.,
Houston, Tex., for appellee.

Before HUTCHESON, WISDOM, and
GEWIN, Circuit Judges.

WISDOM, Circuit Judge:

The petitioner, Jose Martinez Mendoza, was convicted by a jury September 29, 1960, for violation of the Federal Narcotic Drugs Import and Export Act, 21 U.S.C. § 174.[1] He was given a twelve-

---

1. 21 U.S.C. § 174:

Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. * * * [¶] Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.

year sentence. He did not appeal. In this proceeding under 28 U.S.C. § 2255, Mendoza's petition alleged only that the indictment was insufficient to support the conviction. The district court denied the motion, without a hearing, in a careful memorandum order. On appeal of the order, Mendoza asserted three new issues: (1) insufficiency of evidence to support his conviction; (2) denial of his right to counsel before arraignment; and (3) the admission of evidence obtained in the course of an illegal arrest. We postponed our decision pending the Supreme Court's disposition of Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and related cases involving the right to pre-arraignment counsel. We now affirm.

## I.

About six in the morning, July 1, 1960, the petitioner, Jose Mendoza, his common law wife Carmen Stahl, and three others were traveling by automobile through Freer, Texas, on their way to San Antonio. Mendoza was driving. Reese Hughes, a Freer constable, saw the car make an illegal turn. He followed the car two blocks north, two blocks west, and overtook it, intending to give the driver a ticket for a traffic violation. After learning that Mendoza had no driver's license, Hughes ordered Mendoza to drive to the Freer City Hall to answer charges of driving without a license and other violations. When Hughes asked Mendoza to identify himself, Mendoza produced identification papers of Richard Sanchez Espinosa of San Antonio.

At City Hall, Hughes and other officers examined the physical appearance of the arms of all five occupants of the car. The officers had not then warned the group of their right to remain silent. Mendoza voluntarily pulled off his coat and rolled up his shirt sleeves for this examination.[2] The officers found nar-

cotic needle marks on his arms and on the arms of three of his companions. The four admitted that they were heroin users. Hughes promptly telephoned Frederick A. Rody, a United States customs agent in Laredo, Texas, sixty miles away, and said that he had reason to think that Mendoza and his companions had violated federal narcotics laws.

Rody and another customs agent, Charles F. King, drove from Laredo to Freer City Hall, arriving later in the morning. King questioned each passenger of the automobile. He warned Mendoza that he was not under arrest, that he did not have to answer any questions, and that any answers he gave could be used against him. Mendoza and his companions explained that they were returning to their homes in San Antonio after an unsuccessful attempt in Laredo to locate Miss Stahl's aunt. They denied possession of narcotics.

While the others remained at City Hall, Constable Hughes took Mendoza, still masquerading as Espinosa, before the local magistrate. Mendoza pleaded guilty to traffic charges. These are not set out in the record. He was then taken back to City Hall, where the customs agents were continuing their examination of the other passengers. Agent King, in examining Mendoza, verified that his arms had the identifying marks of a heroin user. Mendoza admitted using heroin about three times a week. About this time, King learned from the San Antonio customs agents that the San Antonio police had an outstanding armed robbery warrant for the arrest of Carmen Stahl and Jose Martinez Mendoza. He suspected that "Richard Espinosa" was Mendoza. Questioned, Mendoza quickly conceded his identity.

The customs agents took the four narcotics suspects to a physician's office in Laredo for physical examinations. There the doctor found a rubber finger

---

2. Mendoza's affidavit supporting the § 2255 petition alleged that Hughes took him into a small room and started beating him with a blackjack for information about narcotics. Hughes denied under cross-examination that he touched Mendoza with a blackjack or any other object. The petitioner has dropped this contention on appeal.

stall containing 52 grams of heroin hydrochloride in Miss Stahl's vagina. She admitted that she bought the heroin in Laredo and had thrown away several other packages containing heroin while Hughes was pursuing the party in Freer. The doctor's examination of Mendoza's needle marks indicated that he was a long-time user of narcotics. The doctor did not tell Mendoza that the inspection was voluntary or that he did not have to make any statements. He concluded, however, that the customs agents had not used force to extract any statements from the petitioner.

The agents placed Mendoza under federal arrest. At about 4 p. m. he was arraigned before the United States Commissioner in Laredo. According to the government's brief, all four defendants were advised at the arraignment of their right to counsel and right to remain silent, and Mendoza was given ample opportunity to obtain an attorney. He waived his hearing before the Commissioner. None of the defendants asked to consult an attorney prior to their appearance before the Commissioner, and Mendoza made no demand to consult an attorney until bail was set. Mendoza had a separate trial, although he was charged on a common indictment with his three companions.

## II.

In his 2255 petition Mendoza alleged that his indictment was insufficient to support the conviction, relying on Lauer v. United States, 7 Cir. 1963, 320 F.2d 187. Lauer held that an indictment charging unlawful sales of narcotics under 26 U.S.C. § 4705 was defective on its face in failing to name the purchaser of the narcotics. This Court,[3] as well as most of the other circuits,[4] has declined to follow Lauer, and the Seventh Circuit, sitting en banc, has recently overruled the decision.[5]

The gist of Mendoza's offense under 21 U.S.C. § 174, as the indictment charged, was to knowingly "receive, conceal, buy, sell, or * * * facilitate the transportation, concealment, or sale of" a narcotic drug after the same is unlawfully imported into the United States. In the case at bar the word "sell" appeared as one of several possible ways in which the statute had been violated, charged in the conjunctive along with "receive, conceal, buy, * * * and facilitate the transportation and concealment of" a drug. It has never been held that the name of a person to whom the narcotics were allegedly sold is an essential element of an indictment under § 174, the omission of which would render the indictment vulnerable to collateral attack. United States v. Jackson, 3 Cir. 1965, 344 F.2d 158.

The petitioner contends that the indictment is vague but does not state in what respects it is vague. The general rule is that an indictment tracking the statute sets out the elements of the offense and will be held sufficient. This principle has been applied to indictments similar to Mendoza's indictment. United States v. Rodgers, 5 Cir. 1955, 218 F.2d 536; Rodriguez v. United States, 5 Cir. 1955, 218 F.2d 810; Brown v. United States, 9 Cir. 1955, 222 F.2d 293; United States v. Bailey, 7 Cir. 1960, 277 F.2d 560; United States v. Glass, 7 Cir. 1960, 277 F.2d 566; and Palomino v. United States, 9 Cir. 1963, 318 F.2d 613.

3. Firo v. United States, 5 Cir. 1965, 340 F.2d 597; Jackson v. United States, 5 Cir. 1964, 339 F.2d 210; Borroto v. United States, 5 Cir. 1964, 338 F.2d 60. See also United States v. Rodgers, 5 Cir. 1955, 218 F.2d 536; Rodriguez v. United States, 5 Cir. 1955, 218 F.2d 810.

4. See Llamas v. United States, E.D.N.Y. 1963, 226 F.Supp. 351, aff'd, 2 Cir. 1964, 327 F.2d 657; United States v. Jackson, 3 Cir. 1965, 344 F.2d 158; United States v. Dickerson, 6 Cir. 1964, 337 F.2d 343; Jackson v. United States, 8 Cir. 1963, 325 F.2d 477; Robison v. United States, 9 Cir. 1964, 329 F.2d 156; McDowell v. United States, 10 Cir. 1964, 330 F.2d 920, cert. denied, 377 U.S. 1006, 84 S.Ct. 1944, 12 L.Ed.2d 1055.

5. Collins v. Markley, 7 Cir. 1965, 346 F.2d 230. See also United States v. Ewell, 1966, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed. 2d 627.

■ The entire record of a case may be examined to resolve any question of double jeopardy. Firo v. United States, 5 Cir. 1965, 340 F.2d 597; Collins v. Markley, 7 Cir. 1965, 346 F.2d 230. In this case, the evidence and instructions amply support the several elements of the indictment, including the defendant's knowledge that the heroin was illegally imported.

## III.

■■ The petitioner recognizes that he may not question the sufficiency of evidence for his conviction in a section 2255 proceeding. Armstead v. United States, 5 Cir. 1963, 318 F.2d 725. Mendoza questions whether there was any evidence whatever of his knowledge or possession of an unlawfully imported drug. It is "a violation of due process to convict and punish a man without evidence of his guilt." Thompson v. City of Louisville, 1960, 362 U.S. 199, 206, 80 S.Ct. 624, 628, 4 L.Ed.2d 654. This argument is inapplicable here.

■■ Mendoza contends that there is no presumption of guilt arising from possession of unlawfully imported narcotics, because his wife, not he, was in possession of the narcotics. But here, without benefit of the presumption of *defendant's* possession, there was sufficient evidence for the jury to find that he knowingly facilitated the transportation and concealment of illegally imported heroin by his common law wife. We need mention only that: (1) Mendoza and his common law wife traveled some 150 miles from San Antonio to Laredo, a border city and a center of traffic in narcotics smuggled from Mexico; (2) he admitted that he knew that his wife had obtained a quantity of heroin and expected to share it with her; (3) knowing this, and that she had the narcotics concealed on her person, he drove his automobile with her as a passenger from Laredo by an unusual and circuitous route toward San Antonio;

(4) upon becoming aware of the surveillance of a police officer, he attempted to outrun the police car and escape; (5) upon his arrest, he attempted to conceal his identity and the reason for his trip to Laredo; (6) he was an admitted user of narcotics over a period of eight years; (7) both Mendoza and Carmen Stahl proved upon physical examination by a physician with exceptional experience in dealing with narcotic addicts to be marked by hypodermic needles and, in the physician's expert opinion, to show the symptoms of the narcotic user; (8) Mendoza's admissions supply explicitly all of the elements of knowledge required under the statute with the exception of the importation of the drug, and this the evidence supplies circumstantially. Cf. Arellanes v. United States, 9 Cir., 1962, 302 F.2d 603, 606; Figueroa v. United States, 9 Cir. 1965, 352 F.2d 587. The evidence is also sufficient to sustain the conviction under the aider and abettor statute. 18 U.S.C. § 2. Cf. Hernandez v. United States, 9 Cir. 1962, 300 F.2d 114. The petitioner's due process argument is simply another attempt to make section 2255 do service for an appeal. Sunal v. Large, 1947, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982.

## IV.

■ The petitioner first raised the right-to-counsel question in this appeal. Ordinarily we do not consider an issue not raised in the district court. Hornbrook v. United States, 5 Cir. 1954, 216 F.2d 112. However, the record on appeal showed a possibility of a violation of the constitutional standards in Escobedo v. State of Illinois,[6] 1966, decided six months after Mendoza filed his motion. To expedite the disposition of this issue, we retained Mendoza's case until the Supreme Court should decide on the right to pre-arraignment counsel in Miranda v. Arizona[7] and related cases. The Supreme Court now has held that "*Escobedo* affects only those cases in which

**6.** 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

**7.** 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the trial began after June 22, 1964, the date of that decision." Johnson v. State of New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 1775, 16 L.Ed.2d 882, 885. Mendoza's trial began nearly four years before *Escobedo*. Accordingly, the Supreme Court's *Johnson* ruling precludes the application of *Escobedo* and its progeny to Mendoza's case.

Mendoza does not contend that his arraignment was unnecessarily delayed. F.R.Crim.Proc., Rule 5; Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. Some time passed while Mendoza was taken before a local justice of the peace and pleaded guilty; while he was first questioned and his identity verified; while he was later questioned and medically examined. Customs agents had to come from Laredo, sixty miles away. Upon the officers' discovery of the heroin and after Mendoza's admissions, the officers immediately scheduled the arraignment. The delay that then occurred was to give Mendoza additional time to find an attorney, if he wished one. At four in the afternoon, when all the defendants were taken before the United States Commissioner and again advised of their rights, all but Mendoza asked for time in which to obtain counsel. Mendoza, perhaps because of having admitted a previous narcotics conviction, waived his hearing before the Commissioner, and did not request an attorney. He does not question the adequacy of his counsel after the indictment or at the trial. See Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct.

1019, 82 L.Ed. 1461; Lee v. United States, 5 Cir. 1963, 322 F.2d 770.

Mendoza does not assert in this appeal that his admissions to the arresting officers were coerced.[8] He did not move at his trial to have these statements excluded as involuntary. He made no suggestion that he wished to testify in the absence of a jury as to the voluntariness of his admissions. See Schaffer v. United States, 5 Cir. 1955, 221 F.2d 17. Vigorous cross-examination of the interrogating officers and the examining doctor failed to produce even a trace of evidence that Mendoza's statements were coerced. Cf. Haynes v. State of Washington, 1963, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513; Spano v. People of State of New York, 1959, 360 U.S. 315, 79 S. Ct. 1202, 3 L.Ed.2d 1265; Johnson v. State of New Jersey, supra. In these circumstances, taking the record as a whole, no hearing is required on the petitioner's right to counsel or the involuntariness of his statements to the interrogating officers. There is no merit to his belated contention.

## IV.

Before or during the trial Mendoza made no motion challenging any evidence and, as pointed out, he did not appeal. Here, however, he presses the argument that his conviction was based on evidence obtained in the course of an illegal arrest. Mendoza contends that the heroin needle marks on his arm were discovered while he was detained for a "speeding" violation, and that the offense of speeding, under Texas law, does not support a lawful arrest.[9] He urges that the re-

---

8. See note 2 supra. We keep in mind, however, that the Supreme Court, in refusing to apply *Escobedo* and *Miranda* retroactively, observed that prisoners whose trials began before those decisions "may invoke a substantive test of voluntariness which * * * has become increasingly meticulous through the years." Johnson v. State of New Jersey, 384 U.S. at 730, 86 S.Ct. at 1779, 16 L.Ed. 2d at 890.

9. Texas officers may make an arrest for a speeding violation without a warrant.

Vernon's Ann.Tex.Civ.Stat. Art. 6701d, §§ 148(a), 153 (1960); Vernon's Ann. Tex.Pen.Code Art. 803 (1961). However, unless the violator demands an immediate hearing before a magistrate, the officer must release the motorist on a written notice to appear at a set time before a designated court of competent jurisdiction. Tex.Civ.Stat. Art. 6701d, § 148(a) (1960); Tex.Pen.Code Art. 792 (1961); Spencer v. Southland Life Ins. Co., Tex. Civ.App.1961, 340 S.W.2d 335. But see Tex.Civ.Stat. Art. 6701d, § 150 (1960): "[T]he procedure described herein shall

covery of the narcotics and his related admissions must be considered inadmissible fruit of an illegal search and seizure. Nardone v. United States, 1939, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Elkins v. United States, 1960, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669. If the evidence had indeed been unlawfully obtained, the contention would raise the question whether a prisoner's claim that his conviction rested on an illegal search and seizure can be asserted collaterally in a Section 2255 proceeding. We do not reach this interesting question.[10] The record shows that the search and seizure were lawful.

 We look to Texas law to determine the validity of the arrest. Collins v. United States, 5 Cir. 1961, 289 F.2d 129, 131. In Texas the seizure of narcotics has repeatedly been held legal where officers were authorized to arrest an accused for traffic violations. Palacio v. State, 1957, 164 Tex.Cr.R. 400, 299 S.W.2d 944; Brown v. State, 1953, 159 Tex.Cr.R. 306, 263 S.W.2d 261. See Jackson v. United States, 5 Cir. 1965, 352 F.2d 490; McNeely v. United States, 8 Cir. 1965, 353 F.2d 913, 918; United States v. Rodgers, E.D.Mo.1965, 246 F. Supp. 405.

 The trial record shows a lawful arrest for several traffic violations at the time Mendoza was examined for needle marks. The arresting officer testified that he followed Mendoza's automobile because it "made a reckless turn into a side street." Mendoza attempted to escape apprehension by speeding up one street and over another. The car had the "mark of fleeing men * * * acting furtively." Henry v. United States, 1959, 361 U.S. 98, 103, 80 S.Ct. 168, 172, 4 L.Ed.2d 134, 139. Mendoza concedes that Hughes accused him of not having a proper driver's license. Accordingly, the officer had probable cause to arrest Mendoza both for making an improper turn[11] and for failing to display a proper driver's license.[12] For each of these offenses, Texas officers have general authority to arrest without a warrant.[13] They have the choice of taking the prisoner before a magistrate, issuing a written notice to appear, or invoking any other appropriate procedure of arrest. Tex.Civ.Stat. Art. 6701d, §§ 147–48, 150, 153 (1960). In this case, the Freer officers chose to take Mendoza promptly to City Hall for a reasonable search of his person while he was still under arrest for traffic violations. Shortly thereafter, the officers learned of San Antonio's outstanding warrants for his arrest on armed robbery charges.

 The search of Mendoza did not exceed the scope of the arrest. Generally speaking, the Government has a right "always recognized under English and American law, to search the person of the accused when legally arrested, to discover and seize the fruits or evidences of crime". Weeks v. United States, 1914, 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652. This principle has a limited application when the government intrusion is beneath the skin surface or into body cavities. Schmerber v. State of California, June 20, 1966, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. Here, Mendoza, on request, rolled up his sleeves. His needle scars spoke loudly. He does

---

not otherwise be exclusive of any other method prescribed by law for the arrest and prosecution of a person for an offense of like grade."

10. See Amsterdam, Search, Seizure, and Section 2255: A Comment, 112 U.Pa.L. Rev. 378 (1964). Cf. Alexander v. United States, 5 Cir. 1961, 290 F.2d 252 (Brown, J., concurring).

11. Tex.Civ.Stat. Art. 6701d, §§ 65–70 (1960); see Tex.Pen.Code § 801(A), (G),

& (K) (1961). These statutes are in addition to any Freer municipal ordinances that could have authorized the arrest.

12. Tex.Civ.Stat. Art. 6687b, § 13 (1960).

13. Tex.Civ.Stat. Art. 6701d, § 153 (1960); Tex.Pen.Code Art. 803 (1961). See also Vernon's Ann.Tex.Code Crim.Proc. Art. 14.01 (1965). Compare Model Code of Pre-Arraignment Procedure, Appendix II at 224–27 (Tent. Draft No. 1, 1966).

not contend that he was given any other personal search. He does not contend that he has standing to attack the search of Carmen Stahl.

We find no error on the district court's denial of the petitioner's motion to vacate the sentence. The judgment is affirmed.