Donald Wayne SUMRALL, Joe Jerrell Crocker and Raymond Claud Nabors, Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 9417–9419.

United States Court of Appeals Tenth Circuit.

Sept. 6, 1967.

Emmett Colvin, Jr., and Mike Barclay, Dallas, Tex., for appellants.

Bruce Green, U. S. Atty., for appellee.

Before MURRAH, Chief Judge, MILLER* and HICKEY, Circuit Judges.

MURRAH, Chief Judge.

When this case was first before us, we reversed and remanded solely on the prejudicial effect of a reference to the appellants' prior "records". Sumrall et al. v. United States, 10 Cir., 360 F.2d 311. A retrial resulted in a second conviction on substantially the same proof, the sufficiency of which is not questioned. The issue presented here for the first time is the legality of the arrest and search of the appellants and their female companion and the admissibility of evidence obtained by those searches.

The unrebutted evidence pertinently reflects that in February, 1964, the federally insured bank at Red Oak, Oklahoma, was robbed by three armed men. About five days later, the appellants and a female companion, Patricia Ramsey[1], were traveling in a car through a residential area in Dallas, Texas, at approximately 3:30 a. m. when they were stopped by the Dallas Police. Appellant Nabors, who had been driving, "stepped out" of the car and one of the Police Officers advised him that he had been stopped for speeding and for having a defective light over the license plate of his car. After some questioning, Nabors admitted having no driver's license or other identification, whereupon the officer searched him discovering a license in "a name other than his [Nabors'] own" and a "large amount of money". After some further searching and questioning, all three appellants and Patricia Ramsey were taken to the "police station" where a search of "Miss Ramsey's purse" disclosed a "stack of $2 bills". Cross-examination developed the fact that neither appellants Crocker and Sumrall nor Patricia Ramsey had committed any breach of the peace in the officers' presence nor had the officers been advised that they were in flight from a felony. The money taken from Nabors and Patricia Ramsey was identified as part of the currency taken in the Red Oak bank robbery.

During the trial, the money was admitted into evidence over appellants' objection to the effect that " * * * accepting these * * * exhibits into evidence would constitute a violation of the Fourth Amendment * * * [and] the Government has also failed to show proper evidence to substantiate and support the

---

* Sitting by special designation.

1. Patricia Ramsey was neither charged nor tried with these appellants.

search and seizure which caused the exhibits themselves to come into the hands of * * * the United States Government."

The Government now seeks to foreclose the objection for failure to move timely for suppression of the disputed evidence prior to trial. It invokes Rule 41(e), F.R. Cr.P. which provides that a motion to suppress evidence obtained by unlawful search and seizure shall be made " * * before trial * * * unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial * * " The best of the argument seems to be that since the evidence had been introduced in the first trial, ample opportunity was afforded to know the grounds for the motion and that this is a " * * * situation * * * squarely within the rule where the appellants knew of the evidence, knew how it was seized and still failed to file a motion prior to trial pursuant to 41(e)". It is further argued that even though entertainment of a motion to suppress at trial is discretionary with the court, the appellants made no motion but merely made an objection on which the court ruled and, therefore, they cannot raise the question for the first time on appeal.

■ It is indeed true that the appellants had sufficient time, knowledge and opportunity to file a 41(e) motion to suppress prior to trial. But, Rule 41(e) is not rigid and unyielding. While it is " * * * in the interest of normal procedural orderliness" that a 41(e) motion to suppress must be made prior to trial, i. e. see Jones v. United States, 362 U.S. 257, 264, 80 S.Ct. 725, 732, 4 L.Ed.2d 697, the trial court is to be sure vested with discretion to entertain such an objection to the evidence at trial. And see Gilbert v. United States, 9 Cir., 307 F.2d 322. We think in our case the appellants' objection was sufficient to raise the issue. And, although the trial court did no more than overrule the objection to the evidence, we assume that he ruled on the merits of the objection and not on a procedural technicality of untimeliness. So holding, we review the propriety of the court's ruling.

This brings us to the appellants' first contention that the arrest and search of Nabors was illegal rendering the money taken from him inadmissible as a "fruit of the poison tree". And see Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. The argument is that under applicable Texas law [2], the arresting officers had only limited statutory authority to make an arrest without a warrant for traffic violations and were under a statutory duty to release the violater in the absence of a demand for an immediate hearing. See Spencer v. Southland Life Ins. Co., Tex.Civ.App., 340 S.W.2d 335; Brown v. State, 159 Tex.Cr.R. 306, 263 S.W.2d 261; Montgomery v. State, 145 Tex.Cr.R. 606, 170 S.W.2d 750. It is argued that such an arrest is not "full custody" such as would permit a search and is an invalid arrest as a matter of law.

■ Fortunately, the Fifth Circuit has very recently considered this same problem of Texas law in Mendoza v. United States, 5 Cir., 365 F.2d 268. In that case the court, construing Texas statutory law, held that the police officer had probable cause to arrest Mendoza without a warrant for both making an improper turn and failing to display a proper driver's license, and that the officer had a choice of taking the violater before a magistrate, issuing a written appearance notice or "invoking any other appropriate procedure of arrest". Id. 274. Our case is clearly analogous to Mendoza under which either the speeding violation or driving without a proper license was sufficient to sustain a lawful arrest of Nabors. And Cf. Myricks v. United States, 5 Cir., 370 F.2d 901. It has been repeatedly held in Texas that where officers are authorized to arrest an accused for

---

2. It is undisputed that Texas law controls the authority of a Texas Police Officer to make an arrest without a warrant.

traffic violations, the seizure of narcotics is legal, i. e. see Mendoza v. United States, supra, 365 F.2d 274, and cases there cited. We discern no difference between seizing narcotics and seizing other forms of evidence. We hold that having made a lawful arrest of Nabors, "the subsequent search * * * at the time and place of arrest was appropriately incidental thereto". Welch v. United States, 10 Cir., 361 F.2d 214, 215.

Finally, we turn to appellants' complaint of the admission of the $2 bills taken from Patricia Ramsey's purse. Inspired by what was said in McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, and advocated by a Law Review Commentary, "Standing to Object to an Unreasonable Search and Seizure", 34 Chicago L.R. 342, the appellants have constructed a "derivative standing concept" under which they are said to derive standing from their co-participant, Patricia Ramsey, to challenge the lawfulness of the search and the admission of evidence thus obtained. The effect of this is to argue that since they are directly and prejudicially affected by the admission of the evidence obtained by the search and since the person searched is not charged and cannot, therefore, raise the issue, they are persons aggrieved and entitled to the protection of the Fourth Amendment. It is suggested that inasmuch as the exclusionary rule now formulated in Rule 41(e) F.R.Cr.P. is designed as a procedural remedy or deterrent to the unlawful invasions of persons and property prohibited by the Fourth Amendment, the purpose of the Amendment would be best served by including within the rule all persons prejudicially affected by the unlawful search and seizure.

Counsel frankly and commendably concedes that no case law supports this interpretation of the exclusionary rule unless it can be derived from McDonald v. United States, supra. In that case the unlawfulness of the search was established by a defendant who was admittedly aggrieved by the invasion of his privacy and entitled to the return of that which was seized. The co-defendant was deemed entitled to object to the admission of the evidence on the grounds that if the incriminating evidence had been suppressed and returned to the owner, it would not have been available as evidence in the case. But, what was said in that case has never been construed to confer standing to challenge the lawfulness of a search and seizure upon one whose rights of privacy were not invaded.

We have the word of the Law Review commentator[3] that the appellants' so-called general deterrence theory was directly put and either rejected or ignored in Jones v. United States, supra, wherein Mr. Justice Frankfurter unequivocally recognized that the exclusionary rule incident to the prohibitions of the Fourth Amendment is "a means for making effective the protection of privacy"; that to come within the exclusionary rule one must belong to "the class for whose sake the constitutional provision is given"; and that to come within the class, he must be the victim of the search in the sense that his right of privacy was invaded. This interpretation of the rule was again recognized and applied in Wong Sun v. United States, supra. And see Elbel v. United States, 10 Cir., 364 F.2d 127; Woodring v. United States, 10 Cir., 367 F.2d 968. Mr. Justice Douglas, the author of McDonald, agreed with Mr. Justice Frankfurter in Jones concerning the standing to raise the issue.

Throughout the long, tedious and controversial interpretative history of the Fourth Amendment in which standing to invoke its protections has been almost constantly expanded and enlarged, the keystone has been the protection of the right of privacy. The Fourth Amendment has never been characterized as a rule of evidence, but rather a charter for freedom from the invasion of the right of privacy. See Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782. In his dissent in Warden Mr. Jus-

---

3. 34 Chicago L.R. 342, 349.

tice Douglas graphically traced the history of the Amendment, always placing the emphasis on the right of privacy as the very foundation of the Amendment.

We remain convinced that a person aggrieved within the meaning of Rule 41(e) is one who has himself been the victim of an unlawful invasion of his own privacy. And see Elbel v. United States, supra. We hold that the appellants were without standing to raise the unlawfulness of the search and seizure of Patricia Ramsey's purse and that the evidence was properly admitted.

Affirmed.