**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Delfino Donald GALVEZ and Veronica Ruth Galvez, Defendants-Appellees.**

**No. 71–1551.**

United States Court of Appeals, Tenth Circuit.

Aug. 14, 1972.

Paul D. Cooper, Asst. U. S. Atty. (James L. Treece, U. S. Atty., and Richard J. Spelts, Asst. U. S. Atty., on the brief), for plaintiff-appellant.

Leo Zuckerman, Denver, Colo. (Brenman, Sobol & Baum, Denver, Colo., on the brief), for defendants-appellees.

Before LEWIS, Chief Judge, and HOLLOWAY and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Pursuant to 18 U.S.C. § 3731, as amended, the Government appeals from a pretrial order of the trial court suppressing as evidence approximately 800 grams of hashish and the foreign mail package in which it arrived in this country. The general background material and particularly the evidence adduced at the hearing on the motion to suppress are all important to a resolution of this controversy and must be developed fully.

Delfino Donald Galvez and his wife, Veronica Ruth, were jointly indicted with knowingly receiving, concealing and facilitating the transportation and concealment of a quantity of hashish which had been smuggled into the United States, in violation of 21 U.S.C. § 176a. In due time, the two defendants pursuant to Fed.R.Crim.P. 41 filed a Motion to Suppress and for Return of Property. In that motion, they sought an order suppressing as evidence against them "any tangible or intangible objects * * illegally seized and taken by certain agents of the federal government, i. e., narcotics agents or postal inspectors in Boulder, Colorado, on or about Feb. 4, 1971." As grounds for such an order, it was alleged that the search and seizure was based on a warrant which was insufficient on its face; that the seizure of the property was not incident to a lawful arrest; and that no probable cause or reasonable grounds existed for arresting either of the two defendants or for searching their premises.

As an additional ground, it was alleged that government agents had themselves "delivered" the hashish in question to the defendants and then moments later had entered the premises of the defendants and had seized the very hashish which they had just delivered, all of which, according to the motion, should "shock the conscience of the court" to

the end that the motion to suppress should be granted.

As indicated, a full-scale evidentiary hearing was held on this motion, with the Government and the defendants calling some eleven witnesses in all. We summarize their testimony as follows: (1) On January 18, 1971, a foreign mail package addressed to Donald D. Galvez, P. O. Box 451, Walsenburg, Colorado, entered the United States at the Port of New York, with the Customs Declaration stating that its contents were one polaroid camera and lens valued at $150; (2) a border search of the contents of the package was made in New York by the United States Customs and it was determined that the package contained four bricks of hashish and not a polaroid camera and lens; (3) the package was rewrapped and plans were then made for a "monitored" or "controlled" postal delivery to the addressee, Donald D. Galvez, one of the two defendants; (4) on January 29, 1971, the package arrived in Walsenburg, Colorado, and, though a "notice of arrival" was placed in Box 451, no one called for the package; (5) on February 3, 1971, the Walsenburg postmaster, having learned that Karen Galvez, Donald's sister, customarily picked up the mail in Box 451, telephoned Karen at her place of employment in Walsenburg and advised her that there was an airmail package for her brother, Donald; (6) on February 3, 1971, at about 3:30 P.M., Karen picked up the package in question and, after observing the stated contents to be a camera and a lens, placed the package, unopened, in her car; (7) Karen and her vehicle were under surveillance of Government agents for the next five hours, at which time she was arrested without a warrant and the package in question, still unopened on the floor of her car, was seized; (8) on the following day, February 4, 1971, Karen, either voluntarily or as the result of Government coercion, there being conflicting evidence on this point, accompanied the Government agents several hundred miles from Walsenburg, Colorado, to Boulder, Colorado, where she hand delivered the package to her brother; (9) the Government, having made prior arrangements to obtain a search warrant from a state district court judge in Boulder, obtained a search warrant minutes after Karen delivered the hashish to Donald and immediately thereafter a search was made of the premises of Donald D. Galvez and his wife; and (10) in this search the hashish here in question was seized, the package having been opened and one brick of the hashish placed on a desk in a bedroom and the remaining three bricks having been stacked in a closet. Subsequent chemical testing indicated that both Donald and his wife had handled the hashish.

In granting the motion to suppress, the trial court found that the arrest of Karen Galvez in Walsenburg was illegal and that accordingly the ensuing search, in which the Government's agents retrieved the package from her automobile, was unlawful. In this general regard, the trial court further found that though the search of Donald's and Veronica's home was itself a lawful one based on a valid warrant, Donald and his wife nonetheless "had standing to rely on the arrest of Karen Galvez," and it was the illegality of this arrest which formed the basis for the trial court's order suppressing the hashish.

Additionally, the trial court found that "the treatment of Karen Galvez, a 23 year old Spanish-American girl, after her [illegal] arrest was shocking" and that she had been "coerced" by the Government's agents into accompanying them to Boulder and then delivering the package to her brother, Donald. In this connection, the trial court, after stating that the tactics of the Government's agents were "shocking to the conscience of the court," stated that it was suppressing the evidence "either on constitutional grounds, or under its general supervisory power to insure justice for people accused of crime." It is from this order that the Government now appeals.

At the outset, we note that the motion to suppress is based on events occurring in Boulder, Colorado, at or about the

time the defendants were arrested and their premises searched. As concerns the grounds thus urged in the motion to suppress, the trial court, as above indicated, found that the defendants themselves were lawfully arrested and that the ensuing search of their household was a lawful one pursuant to a valid warrant. This ruling is not challenged on appeal.

■ However, though the motion to suppress makes no complaint about Karen's arrest or the search of her car, the evidentiary hearing on the motion to suppress centered largely on the events occurring in Walsenburg surrounding the arrest of Karen and the search of her automobile, and it was those events which formed the basis for the trial court's order suppressing the use at trial of the four hashish bricks found in the defendants' premises in Boulder. As previously indicated, in suppressing the hashish found in defendants' household, the trial court found that Karen's arrest was illegal, being without the benefit of an arrest warrant or probable cause, and that because of the illegality of Karen's arrest the subsequent seizure of the package containing hashish in her car was also illegal. The trial court further concluded that the two defendants had standing to raise the issue of the legality of Karen's arrest and the seizure of the hashish from her automobile. In our view of the matter, however, the defendants have no standing to raise the issue of the legality of Karen's arrest or the seizure of the hashish from her automobile and we elect to dispose of this controversy on that basis.

Our conclusion that the two defendants in the instant case have no standing to contest the legality of the seizure of the package containing hashish from Karen's automobile in Walsenburg is supported by our understanding of such cases as Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); and Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), as well as by numerous cases from this circuit.

In *Jones*, the Supreme Court declared as follows:

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. * * *

"Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy. * * * "

In *Wong Sun*, it was held that heroin unlawfully taken from another was nonetheless admissible in evidence against Wong Sun because the "seizure of this heroin invaded no right of privacy of person or premises which would entitle Wong Sun to object to its use at his trial." So, here, the seizure of the hashish from Karen invaded no right of privacy of person or premises which would entitle Donald or Veronica Galvez to object to its use at their trial.

■ And in *Alderman*, the Supreme Court "adhered" to such cases as *Jones* and *Wong Sun*, and to the general rule "that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."

■ Cases from this circuit which hold that to be a "person aggrieved" within Fed.R.Crim.P. 41, the person moving to suppress must himself have been the victim of an unlawful invasion of his own privacy, are: United States v. Humphrey, 409 F.2d 1055 (10th Cir. 1969); Cochran v. United States, 389 F. 2d 326 (10th Cir. 1968), cert. denied, 391 U.S. 913, 88 S.Ct. 1808, 20 L.Ed.2d 653 (1968), reh. denied, 393 U.S. 899, 89 S.Ct.

70, 21 L.Ed.2d 187 (1968); Sumrall v. United States, 382 F.2d 651 (10th Cir. 1967), cert. denied, 389 U.S. 1055, 88 S.Ct. 806, 19 L.Ed.2d 853 (1968), and Elbel v. United States, 364 F.2d 127 (10th Cir. 1966), cert. denied, 385 U.S. 1014, 87 S.Ct. 726, 17 L.Ed.2d 550 (1967), reh. denied, 386 U.S. 939, 87 S.Ct. 959, 17 L.Ed.2d 812 (1967). Reference to *Sumrall* will demonstrate why we are of the firm view that the two defendants in the instant case have no standing to raise the unlawfulness, if such it was, of the seizure of the hashish from Karen's car in Walsenburg.

In *Sumrall,* three males and one Patricia Ramsey were arrested when the vehicle in which they were riding was stopped because the driver, one of the males, was speeding. A subsequent search of Patricia Ramsey's purse disclosed a "stack of $2 bills" which were later identified as having been stolen in a bank robbery. The three men thus arrested were later charged with the robbery of the bank in which the $2 bills found on Patricia Ramsey, together with other currency, had been stolen. Patricia Ramsey, however, was not charged with bank robbery. Upon trial it was held that the three male defendants had no standing to rely on the unlawfulness of the search of Patricia Ramsey's purse and the seizure therefrom of the $2 bills. Upon appeal, this ruling was upheld, with comment which, though lengthy, we nonetheless repeat here because of its cogency. In *Sumrall,* we stated as follows:

> "Finally, we turn to appellants' complaint of the admission of the $2 bills taken from Patricia Ramsey's purse. Inspired by what was said in McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, and advocated by a Law Review Commentary, 'Standing to Object to an Unreasonable Search and Seizure', 34 Chicago L.R. 342, the appellants have constructed a 'derivative standing concept' under which they are said to derive standing from their co-participant, Patricia Ramsey, to challenge the lawfulness of the search

and the admission of evidence thus obtained. The effect of this is to argue that since they are directly and prejudicially affected by the admission of the evidence obtained by the search and since the person searched is not charged and cannot, therefore, raise the issue, they are persons aggrieved and entitled to the protection of the Fourth Amendment. It is suggested that inasmuch as the exclusionary rule now formulated in Rule 41(e) F.R.Cr. P. is designed as a procedural remedy or deterrent to the unlawful invasions of persons and property prohibited by the Fourth Amendment, the purpose of the Amendment would be best served by including within the rule all persons prejudicially affected by the unlawful search and seizure.

> "Counsel frankly and commendably concedes that no case law supports this interpretation of the exclusionary rule unless it can be derived from McDonald v. United States, supra. In that case the unlawfulness of the search was established by a defendant who was admittedly aggrieved by the the invasion of his privacy and entitled to the return of that which was seized. The co-defendant was deemed entitled to object to the admission of the evidence on the grounds that if the incriminating evidence had been suppressed and returned to the owner, it would not have been available as evidence in the case. But, what was said in that case has never been construed to confer standing to challenge the lawfulness of a search and seizure upon one whose rights of privacy were not invaded.

> "We have the word of the Law Review commentator that the appellants' so-called general deterrence theory was directly put and either rejected or ignored in Jones v. United States, supra [362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)], wherein Mr. Justice Frankfurter unequivocally recognized that the exclusionary rule incident to the prohibitions of the Fourth Amendment is 'a means for

making effective the protection of privacy'; that to come within the exclusionary rule one must belong to 'the class for whose sake the constitutional provision is given'; and that to come within the class, he must be the victim of the search in the sense that his right of privacy was invaded. This interpretation of the rule was again recognized and applied in Wong Sun v. United States, supra. And see Elbel v. United States, 10 Cir., 364 F.2d 127; Woodring v. United States, 10 Cir., 367 F.2d 968. Mr. Justice Douglas, the author of McDonald, agreed with Mr. Justice Frankfurter in Jones concerning the standing to raise the issue.

"Throughout the long, tedious and controversial interpretive history of the Fourth Amendment in which standing to invoke its protections has been almost constantly expanded and enlarged, the keystone has been the protection of the right of privacy. The Fourth Amendment has never been characterized as a rule of evidence, but rather a charter for freedom from the invasion of the right of privacy. See Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782. In his dissent in Warden Mr. Justice Douglas graphically traced the history of the Amendment, always placing the emphasis on the right of privacy as the very foundation of the Amendment.

"We remain convinced that a person aggrieved within the meaning of Rule 41(e) is one who has himself been the victim of an unlawful invasion of his own privacy. And see Elbel v. United States, supra. We hold that the appellants were without standing to raise the unlawfulness of the search and seizure of Patricia Ramsey's purse and that the evidence was properly admitted."

Based on the foregoing authorities, we conclude that the two defendants have no standing to rely on Karen's arrest or the seizure of the package containing hashish from her car as grounds for their motion to suppress. Hence, we need not here determine whether Karen's arrest was in fact an unlawful one, or whether, even assuming the illegality of her arrest, the ensuing search and seizure of the hashish from her automobile was under the circumstances nonetheless a lawful one, either as a seizure of contraband under 49 U.S.C. § 781-3 or under the rule of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

■ There remains for consideration the trial court's alternative ruling that the motion to suppress should be granted because of the treatment afforded Karen by the Customs Agents. In this regard, the trial court found not only that Karen was subjected to an unlawful arrest, i. e., no warrant and without probable cause, but that she was thereafter "coerced" into making the delivery to Donald Galvez by promises of personal immunity from prosecution. If Karen has indeed been wronged, she will no doubt seek legal redress.[1] But we fail to see how any injury done Karen can redound to the benefit of Donald and Veronica Galvez. Again, they simply have no standing.

Whether Karen was pressured by the Customs Agents or not, all she did was deliver to Donald Galvez a package on which he was named as the sole addressee, and which, according to the testimony, would otherwise have been delivered to him by forwarding. Then, according to the evidence, Donald and his wife broke open the package and presumably viewed its contents. And Donald then was apparently in the process of stacking the bricks in a closet when he was arrested. The gist of the indictment thereafter returned against Donald and Veronica Galvez is that they received and concealed hashish which they knew had been smuggled into the United States. In this general regard, our attention has not been drawn to any case

1. In this regard we are advised that Karen has now instituted civil proceedings seeking $200,000 in damages from the Customs Agents.

which would justify the trial court's granting the motion to suppress simply because Karen made the delivery to Donald Galvez. We deem Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); and Villano v. United States, 310 F.2d 680 (10th Cir. 1960), relied on by counsel, to be inapposite.

■ The trial court specifically held that the interception and discovery of the hashish in New York was a legal border search. Under the cases cited below, this holding is quite correct. Furthermore, controlled or monitored deliveries of intercepted mail packages of foreign origin to the named addressee have been upheld. In support of both the foregoing propositions, see such cases as Chapman v. United States, 443 F.2d 917 (10th Cir. 1971); United States v. Beckley, 335 F.2d 86 (6th Cir. 1964); and United States v. Sohnen, 298 F.Supp. 51 (E.D.N.Y.1969).

For instances where the courier of drugs upon his arrest agreed to "cooperate" with the authorities and deliver, or attempt to deliver, the drugs in question to the ultimate consignee, who was then charged and convicted of a drug violation, see such cases as Good v. United States, 410 F.2d 1217 (5th Cir. 1965), cert. denied, 397 U.S. 1002, 90 S.Ct. 1131, 25 L.Ed.2d 413 (1970); Stassi v. United States, 410 F.2d 946 (5th Cir. 1965); Haynes v. United States, 319 F.2d 620 (5th Cir. 1963); and United States v. Davis, 272 F.2d 149 (7th Cir. 1959).

There is some suggestion that this may be a case of entrapment. In our view, however, the issue of entrapment is not in anywise before this court at this time.

The trial court's order granting the defendants' motion to suppress being in our view erroneous, the same is hereby vacated and the case is remanded to the trial court with direction that it deny the motion.

HOLLOWAY, Circuit Judge (concurring):

I agree with the majority opinion that the suppression order should be vacated.

In connection with the arrest of Karen Galvez, and the search and seizure of the hashish from her car. I do not feel that the appellees lack standing to assert the claim of unlawful search and seizure. United States v. Jeffers, 342 U.S. 48, 52, 72 S.Ct. 93, 96 L.Ed. 59, recognized such standing by one whose property was seized, although his right of privacy in the hotel room occupied by others was not infringed. I believe that Donald and Veronica Galvez do have standing to complain of the seizure of the hashish in Walsenburg because of their interest in the package which they are charged with receiving and concealing. See Simmons v. United States, 390 U.S. 377, 389–390, 88 S.Ct. 967, 19 L.Ed.2d 1247. Nevertheless the hashish was lawfully seized from the car. It was contraband, 26 U.S.C.A. §§ 7302 and 4741, and 49 U.S.C.A. §§ 781 and 787(d); the officers had probable cause to believe it was in the car; and since the hashish was thought to be in an automobile on the streets at nighttime, the circumstances justified the search and seizure without a warrant. See Chambers v. Maroney, 399 U.S. 42, 48–51, 90 S.Ct. 1975, 26 L.Ed.2d 419; Carroll v. United States, 267 U.S. 132, 158–159, 45 S.Ct. 280, 69 L.Ed. 543, and United States v. Hill, 442 F.2d 259 (5th Cir.). Without regard to the arrest of Karen Galvez—lawful or unlawful—the seizure of the package was permissible. Therefore, I agree that the evidence cannot be suppressed on a claim of unlawful seizure at Walsenburg.

As to the alternative holding of the trial court, suppressing the evidence because of findings of misconduct shocking the conscience of the court, I agree that Donald and Veronica Galvez do not have standing to complain of this alleged misconduct. This claim of abuse essentially involved only Karen Galvez and no assertion was made of such mistreatment of the appellees so that they may not assert the claim. See Elkins v. United States, 364 U.S. 206, 222–223, 80 S.Ct. 1437, 4 L.Ed.2d 1669.