**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Gerald Paul HARWOOD, Defendant-Appellant.**

**No. 72–1498.**

United States Court of Appeals, Tenth Circuit.

Dec. 18, 1972.

---

18. McGaffey at 368.

Jerry Cord Wilson, Asst. U. S. Atty., (William R. Burkett, U. S. Atty., on the brief), for plaintiff-appellee.

Mac Oyler, Oklahoma City, Okl., for defendant-appellant.

Before BREITENSTEIN and Mc-WILLIAMS, Circuit Judges, and CHRISTENSEN, District Judge.

McWILLIAMS, Circuit Judge.

Gerald Paul Harwood was charged in a one count indictment with knowingly and unlawfully possessing six automatic firearms not registered to him in violation of 26 U.S.C. §§ 5845(b) and 5861(d). Thereafter, Harwood filed a motion to suppress the use as evidence of the six firearms which formed the basis for the indictment on the grounds that such were obtained in an unlawful search and seizure. Upon hearing, the trial court, apparently without comment, simply denied the motion to suppress.

Trial by jury before a judge other than the one who denied the motion to suppress resulted in a guilty verdict and Harwood now appeals. The only issue presented to us is the correctness of the trial court's denial of the motion to suppress. We conclude that the trial court erred and under the circumstances should have granted the motion to suppress the use as evidence of the six weapons in question. The evidence adduced at the hearing on the motion to suppress is all important and we shall review it in some detail.

The search in question was pursuant to a warrant issued on the basis of the affidavit of one James P. Wheeler, a special investigator for the Alcohol, Tobacco and Firearms Division of the United States Treasury. The facts alleged in the affidavit as grounds for the issuance of a search warrant are set forth below.[1] The italicized portion of

---

1. "On Nov 23, 1971, I received information from a heretofore proven reliable source, which I believe, that a large quantity of machineguns were stashed at the above

the factual recital was penned in, with the balance of the recital being in typewritten form.

At the hearing on the motion to suppress, it developed that an informer had called the police chief for Midwest, Oklahoma, on November 21, 1971, concerning some automatic weapons. The police chief testified that although he had prior acquaintance with the informer, he had no occasion to ever use any of the informer's information as the basis for any criminal investigation.

Wheeler, whose affidavit formed the basis for the issuance of the search warrant, testified at the hearing on the motion to suppress that he first learned about the matter when he was called by the police chief on November 22, 1971, and that later that same evening he conferred with the police chief and the informer. Wheeler went on to testify that he had *no* prior acquaintance with the informer and that accordingly he had *no* occasion to ever use any information given him by the informer, let alone that such information had resulted in two convictions.

The search warrant issued on Wheeler's affidavit authorized a search of a one-story frame dwelling house, all appurtenances and all outbuildings located at 1228 SE 20th Street, in Oklahoma City, Oklahoma. These premises were occupied by one David Leon Harvey, who testified that sometime in September 1971 he had given Harwood permission to store some containers in the attic of his garage. The weapons in question were later found in these containers stored in the attic of Harvey's garage. Harvey further testified that he gave Harwood permission "to come

and go in regard to these containers" and that Harwood had on at least one occasion checked the containers in question.

The search warrant was issued by a United States Commissioner at 6:30 A. M. on November 23, 1971, and, as indicated, a search of the premises described in the search warrant about an hour after the issuance of the warrant disclosed the six automatic firearms packed in containers stored in the attic of the Harvey garage.

■■ It was on this general state of the record that the trial court denied the motion to suppress, notwithstanding the fact that the testimony of Wheeler was patently at odds with the recitals in his affidavit. In our view of the matter, when it came to the attention of the trial court that the recitals in the affidavit upon which the search warrant had been issued were incorrect in significant particulars, the trial court should have promptly granted the motion to suppress. In support of our conclusion, *see* such cases as United States v. Upshaw, 448 F.2d 1218 (5th Cir. 1971), cert. denied, 405 U.S. 934, 92 S.Ct. 970, 30 L.Ed.2d 810; United States v. Roth, 391 F.2d 507 (7th Cir. 1968); and United States v. Pearce, 275 F.2d 318 (7th Cir. 1960).

In *Upshaw* appears the following pertinent comment:

"Once it came to the attention of the court, from the testimony at the motion to suppress hearing, that evidence had been seized on the basis of statements of facts erroneously made by the affiant which struck at the heart of the affidavit's showing of

premises. The reliable source further stated to me that he had been at 1228 SE 20th Street, Okla City, Oklahoma on Nov 22, 1971; that he saw a machine gun pistol, a grease gun, a MI4 A1 machinegun, a anti tank gun and about 8 foreign machineguns. He further stated to me that the firearms were stashed in the attic above the garage at 1228 SE 20th Street, Okla City, Oklahoma and that the foreign machineguns, greasegun,

and machine gun pistol were in a box about 3 ft long and 2 ft wide, olive drab in color, with white lettering on the box. He also stated that the anti tank gun and other firearms in olive drab canvas cases were laying beside the box in the attic. *The reliable source, has furnished me with reliable information, in the past several months, which has resulted in two convictions.*"

probable cause, the court was required to grant the motion [to suppress].
\* \* \* "

To like effect, in *Roth* it was stated:

"At the hearing on the motion to suppress in the instant case, testimony was elicited which exposed a fatal flaw in the affidavit. The affiant, Morrison, testified that the confidential informant told him, 'there was a load of Hamilton Beach *products* that were stored in a grocery store out on the 6500 block of Calumet Avenue in Hammond, Indiana.' In contrast, Morrison's affidavit stated that the informant told him that 'the *said electric blenders* [the stolen items]' were on the defendant's premises. (Emphases added.) When Morrison's testimony is compared with his statement in the affidavit, a contradiction is disclosed, glaring enough to require the trial court to find the affidavit insufficient as a matter of law."

And in *Pearce* it was held that in a hearing on the defendant's motion to suppress it was proper for the court to hear evidence bearing on the asserted falsity of recitals in the affidavit and when such falsity was demonstrated the evidence obtained in the search should be suppressed.

In the instant case, it was demonstrated beyond any question that the recitals made by Wheeler in his affidavit presented to the Commissioner as grounds for issuing a search warrant were manifestly incorrect. Wheeler, in his testimony at the hearing on the motion to suppress, testified that he had never even seen the informant before his meeting with him and the police chief on November 22, 1971. Such completely negates, for example, the assertion in his affidavit that "the reliable source, has furnished me with reliable information, in the past several months, which has resulted in two convictions." It also refutes the assertion in the affidavit that he (Wheeler) had received information "from a heretofore reliable source \* \* \*."

In sum, the demonstrated falsity of material recitals in the affidavit rendered invalid the ensuing search. That is not to say that every misstatement in an affidavit would necessitate a holding that a search warrant issued thereon is invalid. But in the instant case, the incorrect statements related to material matters, and if the incorrect statements be eliminated, there is nothing left which would meet the requirements of such cases as United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); and Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

■ There remains the issue as to whether Harwood has standing to challenge the search of Harvey's premises and the seizure therein of his (Harwood's) property. We conclude that he has. In this regard, the undisputed evidence was that Harwood stored the containers in question in the attic of Harvey's garage with the latter's permission and that Harwood was granted permission to "come and go" to the end that he did on occasion check his property. In our view, these facts bring the instant case clearly within the rationale of such cases as Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); and United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). Indeed, the facts of the instant case are quite analogous to those in *Jeffers*. There, the defendant was held to have standing to challenge the unlawful search of his aunts' hotel room which resulted in the seizure of certain drugs allegedly belonging to the defendant. Though the aunts had not given the defendant permission to store drugs in their room, the defendant nevertheless had permission to use the room at will and had often used the room for various

purposes. Such is believed to be quite comparable to the facts of this case.

The Government suggests that our recent case of United States v. Galvez, 465 F.2d 681 (10th Cir. 1972), requires the conclusion that Harwood has no standing to challenge the search of Harvey's garage. However, on oral argument counsel conceded that the facts of *Galvez* are so dissimilar as to render *Galvez* of little help in resolving the present controversy. We agree.

Also upon oral argument it was agreed that should this court reverse, the case should be remanded with directions to dismiss, inasmuch as the gravamen of the charge was the possession of the weapons taken in the unlawful search. Without such evidence, the Government concedes, its case must fall. Again, we agree.

In our disposition of the case we need not, and do not, concern ourselves with the legality of a "second" search of the defendant's own premises situated at 410 SE 17th in Oklahoma City.

Judgment reversed and cause remanded with direction that the trial court grant the motion to suppress and dismiss the indictment.