**UNITED STATES of America, Plaintiff,**

v.

**Cecil W. CHANDLER, III, Defendant.**

No. 98–40003–01–GTV.

United States District Court,
D. Kansas.

Aug. 14, 1998.

Charles D. Dedmon, David J. Phillips, Office of Federal Public Defender, Topeka, KS, Steven J Schweiker, Overland Park, KS, for defendant.

Thomas G. Luedke, Office of United States Attorney, Topeka, KS, for U.S.

### *ORDER*

VAN BEBBER, District Judge.

The Report and Recommendation entered by Magistrate Newman is adopted by this court. Defendants' motion to suppress the evidence is granted. This case is set for trial, Monday, Sept. 14, 1998, 1:30 p.m.

### REPORT AND RECOMMENDATION

NEWMAN, United States Magistrate Judge.

The court has referred this matter to the undersigned United States Magistrate Judge for Report and Recommendation on defendant's Motion to Suppress (doc. 22).

On May 5, 1998 and May 26, 1998, the court conducted hearings on Defendant's Motion to Suppress. At the close of the hearings, the court took the matter under advise-

ment. The court has considered this matter and is prepared to submit this Report and Recommendation to the district judge.

On January 7, 1998, the grand jury returned a two-count indictment against Cecil W. Chandler, III. Count One charges that on October 2, 1997, Cecil Chandler knowingly and intentionally possessed with the intent to distribute or aided and abetted in possession with the intent to distribute approximately 156 grams of a substance or a mixture of substances containing a detectable amount of cocaine base, "crack" cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2. Count Two charges that on or about October 2, 1997, Cecil Chandler conspired with one Tamika Moore and perhaps other persons to possess with the intent to distribute and to distribute in excess of 50 grams of a substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) and 18 U.S.C. § 2.

Defendant requests the suppression of all items seized pursuant to a seizure warrant executed on October 2, 1997. The evidence presented at the suppression hearing established that officers seized 156 grams of "crack" cocaine, scales, a Wal–Mart shopping bag, a cellular telephone, two pagers, photographs, letters, various documents, clothing, and drug paraphernalia including a bong and plastic bags at 908 S. Elm in Ogden, Kansas. From 827 W. 12th # F, Junction City, Kansas, officers seized currency, letters, keys, rolling papers, and various documents. From Room 17 of the Dreamland Motel, Geary County, Kansas, officers seized two Sony Playstations, video games, tennis shoes, clothing, and a watch.

On October 2, 1997, Detective Joseph Espy of the Junction City Police Department executed an affidavit in order to obtain a seizure warrant for the search of 827 W. 12th # F, Junction City, Kansas; Room 17 of the Dreamland Motel, Geary County, Kansas; and 908 S. Elm, Ogden, Kansas, to locate items for seizure.[1] In this affidavit, Detective Espy set forth certain facts related to a stop and arrest of defendant which took place on June 29, 1997. The affidavit stated that defendant was stopped and given a citation for loud music while driving a 1996 Oldsmobile owned by Enterprise Leasing and leased to one Louisa Seabury. After obtaining defendant's consent to search the vehicle, a single rock of "crack" cocaine was found under the driver's seat and defendant was, thereafter, arrested. The vehicle was towed to a storage lot and the affiant contacted Enterprise Leasing Company who advised that the value of the vehicle was $12,137. The affidavit alleged the criminal history of defendant including prior arrests in Junction City, Kansas and Topeka, Kansas, on drug related charges involving cocaine during 1995, and a New York conviction in 1990, for possession of cocaine with intent to sell. The affidavit then alleged that on October 1, 1997, the affiant arrested defendant for felony possession of marijuana at a time when defendant was in the company of one David Seabury who was also arrested on two warrants related to the possession of marijuana. The affidavit alleged that the affiant seized defendant's vehicle. Upon search of the vehicle, a Cellular One service agreement was found signed by a Christopher Chandler, who purported to reside at 908 Elm Street, Ogden, Kansas. The affiant noted that a confidential source had advised that defendant had a safe house in Odgen at the same address. At the time of the arrest, a motel key to Room 17 of the Dreamland Motel was found in defendant's pocket and defendant advised that he was staying there for a couple of days. He gave his residence as 827–F West 12th Street, Junction City, Kansas, which was an address that he used on the Kansas Arrest Form and the address to which he returned after being released on bond. The affidavit noted that on June 30, 1997, a prior "seizure search" warrant was issued and executed on 829–3 W. 12th St., where no items were located or seized.

On October 2, 1997, at 7:46 p.m., a Geary County state district court judge issued a seizure warrant, pursuant to K.S.A. § 60–

1. The 12th Street address and the Dreamland Motel are in Geary County, Kansas and the Og-
den, Kansas, address is in Riley County, Kansas.

4107(a) of the Kansas Standard Asset Seizure and Forfeiture Act (herein "the Act"),[2] to the Sheriff of Geary County, Kansas, and/or Junction City Drug Task Force granting permission to seize property belonging to Cecil Chandler, III, at the identified locations, but imposing restrictions, limiting the property to be seized to "currency, electronic equipment, or jewelry ... not exceeding an estimated fair market value of $11,000." The face of the warrant identified the defendant as "1996 Oldsmobile Achieva" and listed "Substitute Assets" as $115 cash, NEC pager, men's gold ring, diamond earring, and any personalty located at 829–3 W. 12th Junction City, Kansas. It also identified the "Owner" as Cecil Chandler, III.

The evidence at the suppression hearing established that the seizure warrant was executed on October 2, 1997, at 908 S. Elm in Ogden, Kansas. Initially, Michael D. Life, a Junction City police detective and Thomas Alongi, an assistant Geary County attorney, were positioned at the back of the house to secure the safety of the officers. Bill Reese, a Riley County law enforcement officer, Joseph Espy, a Junction City police detective and perhaps other law enforcement officers, approached the front of the house. When the officers at the front of the house announced their presence, the occupants requested that they "wait a minute." The detective and county attorney positioned at the back of the house observed Tamika Moore, one of the occupants of the house, open the back door, place a blue plastic Wal–Mart bag off to the side of the back porch on the outside of the house and let a dog into the back yard. The bag was translucent. The detective at the back of the house told the county attorney to watch the bag, went around the house, entered the residence through the front door, went through the house to the back yard and seized the bag. He brought the bag into the house, opened it, and discovered approximately 156 grams of crack cocaine and scales therein. The detec-

tive testified that he "couldn't tell without really getting into (the bag) that there was cocaine in it."[3] During the course of the search of the house, the officers also seized a cellular telephone, two pagers, photographs, letters, various documents, clothing, and drug paraphernalia including a bong and plastic bags.[4] Detective Espy testified that items such as photos, documents and letters were seized for evaluation as evidence in connection with various ongoing investigations. The seizure warrant was also executed at 827 W. 12th # F and Room 17 of the Dreamland Motel.

Other evidence presented at the suppression hearing detailed a history of the use of seizure warrants in Geary County and a history of defendant's contacts with law enforcement officers from the time of his initial stop on June 29, 1997. In addition to the facts alleged in the October 2, 1997, affidavit set forth above, officers testified that the street value of the cocaine discovered in the June 29, 1997, stop and arrest was approximately $20. During the June 29 arrest, officers seized $115 cash, an NEC pager, a gold ring, and a diamond earring from defendant's person. On June 29, 1997, a Junction City police officer submitted an affidavit to a Geary County district court judge in order to institute civil forfeiture proceedings, pursuant to K.S.A. § 60–4107, related to the property on defendant's person at the time of the June 29 arrest. This affidavit set forth facts related to the stop and arrest of defendant, the ownership and lease of the 1996 Oldsmobile, and the property found on defendant at the time of arrest. It did not set forth any facts which would establish that the property taken from defendant was subject to forfeiture under K.S.A. § 60–4101, et seq.

On the following day, June 30, 1997, Detective Espy executed an affidavit for the purpose of obtaining a civil seizure warrant pursuant to K.S.A. § 60–4107(a). In this af-

---

**2.** K.S.A. §§ 60–4101 to 4126.

**3.** Testimony of Detective Michael Life at Motions Hearing conducted on May 5, 1998.

**4.** The return on the seizure warrant reflected that only a Nokia cell phone and manuals and

two pagers were seized by the Junction City officers, but the testimony at the hearing was that the other items were seized by the Riley County officers and no custody receipt or other return to the seizure warrant was produced to document these seizures.

fidavit, the detective set forth facts of the stop and arrest which took place on June 29, 1997, and further alleged that Enterprise Leasing had advised that the value of the 1996 Oldsmobile was $12,137. The affidavit also alleged a criminal history of prior arrests in Junction City and Topeka on drug-related charges, and a New York conviction in 1990 for possession of cocaine with intent to sell. The affidavit alleged that defendant used several names and that he was serving a term of supervised probation for a conviction related to the possession of marijuana under the name of Cecil Johnson. The affidavit alleged that K.S.A. § 60-4115(A)(6) states "that when property of an owner involved in illicit activity cannot be seized because of the interest of an innocent third party (i.e. Enterprise Leasing) that the court shall order forfeiture of substituted assets up to the value of the underlying property." It alleged, without factual basis, that Enterprise Leasing had no knowledge and could not reasonably have known of defendant's drug activities at the time of his arrest. The affiant, therefore, concluded that the leased vehicle was shielded from forfeiture pursuant to K.S.A. § 60-4106(a)(3)(A). It noted the previous seizure of the cash and jewelry and stated a remaining forfeiture balance of $11,-937. The affidavit requested a seizure warrant authorizing entry into the residence of defendant at 829-3 W. 12th Street, Junction City, Kansas, for the purpose of locating items of personal property totaling no more than $11,937 and which would be suitable for seizure and forfeiture under K.S.A. § 60-4101, et seq.[5] The affidavit acknowledged that there were no published Kansas cases addressing the provisions of the Kansas Standard Asset Seizure and Forfeiture Act, but alleged that other jurisdictions had allowed pretrial seizure of substituted assets.[6]

On July 1, 1997, a Geary County district court judge issued a seizure warrant for "personal property belonging to the above-named owner at said residence ...." The owner is identified as Cecil Chandler. The face of the warrant lists "Substitute Assets" as $115 cash, NEC pager, men's gold ring, diamond earring, and any personalty located at 829-3 West 12th Junction City, Kansas. No property was seized pursuant to this warrant.

Facts produced at the suppression hearing related to defendant's arrest on October 1, 1997, established that defendant was driving his own vehicle on this date with one David Seabury in the front passenger seat. At the time, Mr. Seabury had two outstanding arrest warrants for marijuana offenses. Officers stopped defendant's vehicle in order to arrest Mr. Seabury. During the stop, officers observed "a little flake" of marijuana "that was loose on the carpet" of defendant's car on the passenger side.[7] Defendant was arrested for felony possession of marijuana.

Detective Joseph Espy, the affiant on both the June 30, 1997, and the October 2, 1997, affidavits testified at the suppression hearing that seizure warrants like the one executed on October 2, 1997, had been used by the Junction City Police Department "for the past two years,"[8] and that the seizure warrant allowed officers "to search anywhere in the residence" that could hold the identified property.[9] With respect to the October 2 application for a seizure warrant, Detective Espy testified that "we applied for a seizure warrant to search the residence to find property of value of the three listed items belonging to Mr. Chandler."[10]

Defendant moves to suppress all evidence and property obtained pursuant to the sei-

---

5. The affidavit did not specifically limit property to be seized to that owned by defendant. Neither did it suggest any knowledge concerning the type of property which might be found in the residence.

6. While the affidavit cited certain cases from New York and the Fourth Circuit, the affidavit did not advise the court that all of these cases arose under specific statutes which were unlike the Kansas statutory procedure and involved evidentiary hearings and injunctive relief.

7. Testimony of Detective Joseph Espy during a Motions Hearing conducted on May 5, 1998.

8. Id.

9. Id.

10. Id.

zure warrant executed on October 2, 1997. Defendant argues that the seizure warrant was constitutionally defective in that it lacked a sufficient showing of probable cause to believe that any property belonging to defendant would be found at any of the three locations. Defendant also maintains that the government used the seizure warrant as part of a criminal, not civil, forfeiture proceeding. Defendant claims that the government executed what should have been a judicial post-conviction sanction one day after defendant was arrested and before his initial appearance.

The government responds by arguing that defendant lacks sufficient standing to challenge the officers' conduct on Fourth Amendment grounds. The government contends that the seizure warrant contained sufficient probable cause to seize property located at the three locations. The government also contends that the narcotics found at 908 S. Elm, Ogden, Kansas, were subject to seizure under the "plain view" doctrine. Finally, the government relies on the "good faith" exception to the Fourth Amendment exclusionary rule enunciated in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

The court first addresses the issue of standing. The government contends that defendant does not enjoy a reasonable expectation of privacy at either of the two residences, and thus lacks standing to object to the seizures. *See generally Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Defendant clearly has standing to object to the seizure of items from Room 17 of the Dreamland Motel and the government concedes this. When he was arrested, defendant possessed a key to the room, several of his possessions were found in the room and he told officers that he was "staying in" the room while moving from 908 S. Elm to 827 W. 12th # F. The record indicates that defendant had a reasonable expectation of privacy in the motel room, and thus has standing to challenge its search.

With regard to his standing to challenge the search of 908 S. Elm, Odgen, Kansas, the evidence established that at the time of the search defendant had an active, writ-ten lease on the property for a term of one year commencing April 15, 1997. Under the terms of the lease, subletting was prohibited without the owner's consent. Thirty days notice of termination by the tenant was required. In the event that the tenant failed to pay rent when due, the owner was required to give 30 days notice of prospective eviction. In the event that the rent became more than 30 days delinquent, the owner was entitled to seek immediate eviction. Rent was due between the 1st and the 4th of each month. Defendant advised his landlord of a desire to terminate the lease on September 16, 1997. The landlord testified at the hearing that the lease had not been terminated because defendant had not been released from the lease agreement since a written termination agreement had not been executed. Defendant's rent was current at the time of the search and defendant had property remaining in the house, including photo albums, a birth certificate, letters, clothing and items of a particularly personal nature. Defendant was in the process of moving from the house. Defendant had subleased the property to Tamika Moore without the landlord's permission and Ms. Moore had moved into the house. If an individual pays rent on a house, that individual has standing to challenge a search of that house, regardless of whether or not the individual lives in the house or is even present at the time of the search. *United States v. Martinez*, 842 F.Supp. 467, 470 (D.Kan.1994). In *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), the Supreme Court held that an overnight guest at the home of a third party has standing to challenge a search of that home. *Id.* at 96–97, 110 S.Ct. 1684. The Court reasoned that because an overnight guest has the host's permission to be on the premises, the guest has a reasonable expectation of privacy in the host's residence. *Id.* at 99, 110 S.Ct. 1684. Defendant herein had the permission of the occupants of the property to keep his property there. He had a reasonable expectation that his property would be secure and the general public would not have access to it. If an individual stores property at a residence with the permission of the occupant and that individual has permission to "come and go"

with respect to the property, the individual has standing to challenge the search and seizure of the property. *United States v. Harwood,* 470 F.2d 322, 325 (10th Cir.1972). There is no evidence to support the government's contention that defendant had abandoned his property at 908 S. Elm. Defendant has standing to challenge the search and/or seizure at this property.

■■■■ Defendant also has standing to challenge the search of 827 W. 12th # F. The evidence established that at the time of the search, defendant "was in the process of moving into" 827 W. 12th # F. Defendant gave this address as his residence at the time of his arrest on October 1, 1997. Upon release from custody, defendant returned to 827 W. 12th # F. Defendant had property in the residence at the time of the search with the consent of the occupants. A party who is "in the process of moving into" a residence has sufficient standing to challenge a search of that residence. *United States v. Willey,* 57 F.3d 1374, 1390 n. 30 (5th Cir.1995).

The government argues that defendant does not have standing to challenge the seizures since he lacked a reasonable expectation of privacy at the two residences, while, on the other hand, claiming defendant clearly had sufficient connection to all three locations to justify the execution of a seizure warrant for the search of each address. This is a specious argument. The government relies upon an affidavit in support of its request for search of the properties which recites substantially less factual basis establishing defendant's relationship to each property than was shown at the hearing. The court in *Willey,* noted the government's paradoxical reasoning with respect to standing, stating:

> [T]he government contends that Willey does not have standing to contest the search of the Richards Road property because he did not enjoy a legitimate expectation of privacy in the property. This seems a curious argument for the government to make, given that in every other aspect of the case, the government argues

that Willey did have a real and substantial interest in the Richards Road property. *Id.* at 1390 n. 30.

The seizure warrant herein was issued pursuant to K.S.A. § 60–4107(a). Conduct and offenses which give rise to forfeiture include violations of the Uniform Controlled Substances Act (herein "UCSA") as adopted by Kansas, K.S.A. § 65–4101, et seq., K.S.A. § 60–4104. Property subject to forfeiture includes personal property used or intended to be used in any manner to facilitate conduct giving rise to forfeiture. K.S.A. § 60–4105(b)(2). No property is subject to forfeiture if the owner or interest holder acquired the property before the conduct giving rise to the claimed forfeiture and the owner or interest holder did not know and could not reasonably have known of the act or that it was likely to occur. K.S.A. § 60–4106(a)(3)(A). Property may be seized for forfeiture by a law enforcement officer upon issuance of a seizure warrant by the district court upon an affidavit, under oath, demonstrating that probable cause exists for the property's forfeiture. K.S.A. § 60–4107(a). Property may also be seized for forfeiture by a law enforcement officer without process upon probable cause to believe that the property is subject to forfeiture under the Act. K.S.A. § 60–4107(b). The commencement of forfeiture proceedings are governed by K.S.A. § 60–4109. Proceedings may be either *in rem* under the provisions of K.S.A. § 60–4113 or *in personam* under K.S.A. § 60–4114. Recognition of exemptions under the statute is in accordance with K.S.A. § 60–4110 through the filing of a petition for recognition of an exemption and the filing of a claim on behalf of the owner or interest holder under K.S.A. § 60–4111. When no petition or claim is filed, the plaintiff's attorney proceeds in accordance with K.S.A. § 60–4116 to judicially dispose of the property or the law enforcement agency proceeds under K.S.A. § 60–4117 to retain the property for official use or to dispose of the property in accordance with that section's provisions. Under seven specified conditions, the court shall order the forfeiture of any other property of an "owner" or an *in personam* defendant in an amount up to the value of "that owner's or defendant's property" found by the court to be subject to forfeiture under

the Act. *See* K.S.A. § 60–4115(a).[11] The conditions include when the forfeitable property:

(1) [c]annot be located;

(2) has been transferred or conveyed to, sold to, or deposited with a third party;

(3) is beyond the jurisdiction of the court;

(4) has been substantially diminished in value while not in the actual physical custody of the court, the seizing agency, the plaintiff's attorney, or their designee;

(5) has been commingled with other property that cannot be divided without difficulty;

(6) is subject to any interest of another person which interest is exempt from forfeiture under this act; or

(7) is exempt from forfeiture due to a constitutional or statutory provision.

K.S.A. § 60–4115.

■ The proceedings herein were always considered to be *in rem*. It is in the context of this Act that the court must consider the validity of the warrant issued by the state district court judge and executed by Junction City police officers on October 2, 1997. The court finds that the Kansas Asset Seizure and Forfeiture Act does not authorize the issuance of a search or seizure warrant for substituted collateral sought for forfeiture under the provisions of K.S.A. § 60–4115, until the court has entered an order making the findings set out in K.S.A. § 60–4115.

The express terms of the statute provide that the court shall order the forfeiture of "any other property of an owner" up to the value of that owner's property *"found by the court"* to be subject to forfeiture under the Act, if the owner's property meets one of the seven circumstances set out in the statute. There was no evidence that a court had found any of defendant's property subject to

forfeiture. There was no court order of the forfeiture of any property owned by defendant.

An owner is defined under K.S.A. § 60–4102(j) as

[a] person, other than an interest holder, who has an interest in property. A person who holds property for the benefit of or as an agent or nominee for another person, or who is not in substantial compliance with any statute requiring an interest in property to be recorded or reflected in public records in order to perfect the interest against a good faith purchaser for value, is not an owner. An owner with power to convey property binds other owners, and a spouse binds the person's spouse, by any act or omission.

■ Defendant was not the "owner" of the 1996 Oldsmobile as that term is defined under the Act. There is no evidence before the court that defendant had any interest in the automobile whatsoever. The evidence was that defendant was in possession of an automobile leased by its owner, Enterprise Leasing Company to one Louisa Seabury. Consequently, the provisions of K.S.A. § 60–4115 are not applicable. The Act cannot provide a basis for the issuance of the seizure warrant.

The substituted forfeiture provisions only become applicable when the court has determined that property of an "owner," subject to forfeiture, meets one of the seven criteria. None of the seven criteria are met. While the government has argued that the provisions of K.S.A. § 60–4115 authorize the use of substituted assets when defendant uses the property of an innocent owner to facilitate criminal conduct, the position is not supported by the express terms of the statute. The owner of the 1996 Oldsmobile was En-

---

11. While K.S.A. § 60–4115 also relates to the property of an *in personam* defendant and that defendant's property, no *in personam* proceedings were instituted and there has been no claim that the warrant was issued as a part of an *in personam* forfeiture proceeding. Neither the seizure warrant nor the affidavit supporting the issuance of the warrant identify defendant herein as defendant in the seizure. Rather, defendant in the warrant is identified as the 1996 Oldsmobile automobile and defendant herein is identified as the "owner." The court's conclusions would be the same if the forfeiture proceedings had been *in personam* for the same reasons as stated herein, in that only when the court determines that property of the *in personam* defendant is subject to forfeiture and that property is unavailable for one of the reasons set out in K.S.A. § 60–4115(a) is other property of defendant to be substituted. As noted, no property of defendant has been determined to be subject to forfeiture under the Act and the court has not entered an order so finding.

terprise Leasing, not defendant herein. When the "owner's" property, found by the court to be subject to forfeiture, is subject to the interest of another person, which interest is exempt from forfeiture under the Act, other property of the owner may be ordered by the court to be forfeited. Consequently, other property of Enterprise Leasing would be subject to forfeiture under this provision of the Act, rather than other property of defendant. For this reason, the Act cannot form the basis for the issuance of a seizure warrant for property of defendant.

There is no provision for the issuance of a seizure warrant prior to a judicial determination that property of the "owner" is subject to forfeiture, the value of that property, and that one of the seven criteria exists. The only reasonable construction of the Act is that until the court determines the applicability of the exemption in accordance with the statutory procedures, the court may not order the substitution of other property of the owner. The statute sets out a specific procedure for the determination of exemptions which requires the filing of a petition for recognition of an exemption under K.S.A. § 60–4110, with a claim for exemption to be filed in accordance with the provisions of K.S.A. § 60–4111. When no petition or claim is filed, the property is subject to judicial disposition under K.S.A. § 60–4116 or law enforcement allocation of forfeited property under K.S.A. § 60–4117. There is no evidence that these procedures were followed or that the court entered an order with the appropriate findings set out in K.S.A. § 60–4115(a). There is no order finding that the 1996 Oldsmobile or its equivalent value was subject to forfeiture. While the government argues that the 1996 Oldsmobile is subject to the interest of another person, which interest is exempt from forfeiture, there is no finding of such exemption. There is no provision for a determination of exemption outside the procedure set forth in the statute.

■ There is no provision for substitution of assets under this Act when defendant is using property of another person to facilitate a violation of the UCSA. The Act, as well as the intent behind the Act, relates to forfeiture of the property of defendant when his own property is used to facilitate the offense. When property of a party is used to facilitate an offense and is unavailable for reasons set forth in K.S.A. § 60–4115, then other property which that party owns may be forfeited. All of the criteria in K.S.A. § 60–4115 clearly relate to actions taken with respect to property, which has been determined to be subject to forfeiture, by the owner of that property. The Act is intended to deprive the owner of the use of his property when he uses his property to facilitate the commission of a crime. When the owner has taken action to make the "guilty" property or the value thereof unavailable for forfeiture or where it is exempt from forfeiture by statutory or constitutional exemptions, then the owner is required to forfeit other property of equal value, in order to prevent him from benefitting from his own acts related to having made the property unavailable of the use of his exempt property in the commission of the offense. When defendant uses the property of another, the same public policy issues are not present.

The government relies on *State v. Gray*, 322 Ark. 301, 908 S.W.2d 642 (1995), to support its position that Kansas forfeiture law permits the substitution of other assets for the 1996 Oldsmobile. In *Gray*, the Arkansas Supreme Court interpreted an Arkansas state forfeiture law, similar to the Kansas Act, to allow substituted asset forfeiture for a van which was used by defendants to transport drugs. *Id.* 322 Ark. at 308, 908 S.W.2d at 646. The van was subject to a mortgage lien which was greater than the value of the van itself. *Id.* 322 Ark. at 302, 908 S.W.2d at 643. However, the van was *owned* by the defendants. The van was not the property of an innocent third party. The case does not support the seizure of substituted assets under the facts in this case.

■ Finally, the affidavit in issue does not state probable cause for the issuance of a seizure warrant under the provisions of K.S.A. § 60–4115. It does not allege facts which would allow the magistrate to conclude that defendant had any interest in the 1996 Oldsmobile, including a possessory interest. It alleges no facts which would allow the magistrate to conclude that the 1996 Oldsmo-

bile would be subject to forfeiture. It does not allege that the 1996 Oldsmobile is exempt from forfeiture or provide the facts supporting such a claim or possible claim of exemption. The affidavit did not allege facts related to defendant's use of the 1996 Oldsmobile or the knowledge of Enterprise Leasing concerning defendant's use of the vehicle. Nor did the affidavit allege facts related to any knowledge of Enterprise Leasing related to the use of the vehicle in facilitating the alleged offense. It identifies no property to be substituted. It does not request the opportunity to seize property which might be subject to substitution in the event of a determination that forfeitable property of defendant under K.S.A. § 60–4115 is determined to be unavailable for one of the reasons set out in the statute. The affidavit sets out no factual or legal basis for seizure of any assets of defendant under the Act.

The affidavit on its face does not seek seizure of substituted assets of defendant. It seeks only the issuance of a seizure warrant to permit "the search of" the identified locations "to locate items" for seizure. The affidavit does not even suggest that it is property of defendant that would be the subject of a search. The affidavit is not incorporated in any way into the seizure warrant. The seizure warrant issued does not allow for the search for "items" as requested by the affidavit, but arbitrarily creates three categories of property for seizure, none of which are referenced in the affidavit.

■■■■■ Generally, under the Fourth Amendment to the U.S. Constitution, a seizure must be made pursuant to a warrant based on probable cause. U.S. Const. amend, IV. *Soldal v. Cook County, Illinois, et al.,* 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). In deciding a suppression motion based upon the asserted failure of the affidavit to provide probable cause for the warrant, the court must determine whether the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The reviewing court must remember that the magistrate is permitted to draw reasonable inferences from the affidavit and that the magistrate's deter-

mination is accorded great deference. *See United States v. Edmonson,* 962 F.2d 1535, 1540 (10th Cir.1992); *United States v. Peveto,* 881 F.2d 844, 850 (10th Cir.1989), *cert. denied,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). The magistrate must make a practical, common-sense determination from the totality of the circumstances presented whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Gates* at 238, 103 S.Ct. 2317. "In applying the test enunciated in *Gates,* this Court has stated that the 'affidavit should be considered in a common sense, nontechnical manner' ..." *Edmonson,* 962 F.2d at 1540 (quoting *United States v. Massey,* 687 F.2d 1348, 1355 [10th Cir.1982][citation omitted] ).

'[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.' *Gates,* 462 U.S. at 232, 103 S.Ct. at 2329. The Supreme Court has found it sufficient to say that probable cause is more than a mere suspicion, but considerably less than what is necessary to convict someone. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); see *United States v. Wicks,* 995 F.2d 964, 972 (10th Cir.) ('The existence of probable cause is a "common-sense standard" requiring "facts sufficient 'to warrant a man of reasonable caution in belief that an offense has been committed.' ") (quoting *United States v. Mesa–Rincon,* 911 F.2d 1433, 1439 (10th Cir.1990) (quoting *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949), *cert. denied,* 510 U.S. 982, 114 S.Ct. 482, 126 L.Ed.2d 433 [1993] ).

*United States of America v. Lee, et al.,* 972 F.Supp. 1330, 1337 (D.Kan.1997).

■■■■■ The evidence to support a finding of probable cause must be particularized, not only to defendant, but the location for which the warrant is being sought. *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). It is not necessary, however, that the affidavit indicate that the evidence sought will undoubtedly be found in the place to be searched. Rather, it is

enough when the affidavit establishes a "nexus between the objects to be seized and the place to be searched" from which "a person of reasonable caution" would "believe that the articles sought would be found" there. *United States v. Kelley,* 6 F.Supp.2d 1168, 1178–79 (D.Kan.1998)(quoting *United States v. Hargus,* 128 F.3d 1358, 1362 [10th Cir. 1997]). This nexus "may be established through ... normal inferences as to where the articles sought would be located." *Id.* (quoting *United States v. Freeman,* 685 F.2d 942, 949 [5th Cir.1982]).

The Fourth Amendment requires that warrants for search or seizure will not issue except upon an affidavit setting out probable cause and "particularly describing" the things to be seized. U.S. Const. amend. IV. Consequently, the affidavit must state facts which show probable cause to believe that specific identified property belonging to defendant, subject to forfeiture, would be found at the specified locations.

The October 2, 1997, affidavit does not allege that defendant is the owner of any property, other than a vehicle which it alleges has been previously seized, or that defendant's property is likely to be found in any of the locations. Although the affidavit alleges a factual connection between defendant and each of the properties, it fails to state any facts which would tend to show that any property owned by defendant would be found at any one of the locations. As significant, the affidavit does not allege any facts which would lead a magistrate to conclude that defendant owned currency, electronic equipment, or jewelry or that these items of property would be found at any one of the three locations.

The October 2, 1997, affidavit does not attempt to identify property of any kind for seizure. The only reference in the affidavit to property to be seized at the identified locations is "affiant respectfully requests a seizure warrant for the search of ... [identified locations] ... to locate *items* for seizure not to exceed the value of $12,137.00." The noun "items" is a general description of nothing in particular.

The seizure warrant must be supported by the affidavit. The facts set forth in the affidavit are not sufficient to establish probable cause to believe that "currency, electronic equipment or jewelry" belonging to defendant would be found at any of the locations. Such property is not even mentioned in the affidavit. The affidavit sets out no facts to believe that defendant owned such property. The affidavit does not satisfy the constitutional requirement that it "particularly describe" the things to be seized.

The affidavit is further deficient in that it violates the principles set out in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause. Sufficient information must be presented to allow the magistrate to determine probable cause. *Id.* at 239, 103 S.Ct. 2317. The affidavit fails to identify the person with Enterprise Leasing who placed a value on the 1996 Oldsmobile. It is obvious from the facts set forth in the affidavit that no person with Enterprise Leasing had seen the vehicle to determine its condition or value. Not only is the identity of the person absent, but the qualifications of the person to speak for the corporation or to render a credible opinion concerning value are also lacking. There are no facts which would enable the magistrate to make his own determination as to the reliability of the informant who advised that "Mr. Chandler" had a safehouse in Ogden at the Elm Street address or as to the basis of knowledge of the informant. The mere conclusory hearsay statements of the officer are inadequate under the well-recognized standards of *Gates.*

The affidavit is also conclusory in that affiant states that defendant "has several different names." The source of this information or facts supporting it are not set out. The affiant concludes that it was defendant who signed as Christopher Chandler on the Cellular One agreement found in the vehicle driven by defendant on October 1, 1997. This conclusion is not supported by any facts. It is this same conclusion which is one of the two factual bases alleged for the search of the Elm Street property. The conclusory allegations of the affiant do not allow the neutral and detached magistrate to deter-

mine for himself, based upon the facts presented, including evaluation of the reliability and credibility of the source of the facts, that probable cause exists for the issuance of the warrant.

■ The affidavit requests a seizure warrant for the purpose of searching for items to seize. Obviously, the authority to seize an item involves some authority to search for the item. *United States v. Messino*, 872 F.Supp. 528, 531 (N.D.Ill.1995). However, a seizure warrant cannot be used as a general search warrant. *Id.* To do so would constitute the sort of "exploratory rummaging" barred by the Fourth Amendment. *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). There is no authority for such a warrant under the Kansas Act. Notwithstanding, any such warrant would clearly violate the Fourth Amendment of the Constitution.

■ The government argues that even if the court were to determine that probable cause did not exist to issue the seizure warrant, under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the court should find that the executing officers acted in good faith in reliance on the warrant and, therefore, the evidence should not be suppressed. The exclusionary rule is a judicially-created remedy rather than a personal constitutional right of the aggrieved individual. *Leon*, 468 U.S. at 897, 104 S.Ct. 3405. In *Leon*, the Supreme Court modified the Fourth Amendment's exclusionary rule to provide that evidence seized under a warrant later found to be invalid may be admissible if the executing officers acted in good faith and with reasonable reliance on the warrant. *Id.* at 913, 104 S.Ct. 3405. The Court applied the "good faith" exception to admit the evidence from a search warrant subsequently invalidated by a lack of probable cause. *Leon*, 468 U.S. at 922, 104 S.Ct. 3405. In determining whether to apply the exception, the "good-faith inquiry is confined to the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. 3405. The court must consider all of the

circumstances and the executing officers are required to have a reasonable knowledge of what the law prohibits. *Id.* at 919 n. 20, 104 S.Ct. 3405. The court must also review the text of the warrant and the affidavit to ascertain whether the agents might have "reasonably presume[d] it to be valid." *Leon*, 468 U.S. at 923, 104 S.Ct. 3405. When the magistrate is misled by information in the warrant which the affiant knew to be false, the magistrate wholly abandons his role as a neutral and detached judicial officer, or the warrant is based upon an affidavit that is so lacking in indicia of probable cause as to render belief in its existence unreasonable, suppression remains an appropriate remedy. *Id.* at 923, 104 S.Ct. 3405. The government, rather than defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable. *United States v. Corral–Corral*, 899 F.2d 927 (10th Cir.1990)(quoting *United States v. Michaelian*, 803 F.2d 1042, 1048 [9th Cir.1986] ).

■ While the government contends that the officers who executed the seizure warrant reasonably believed, in good faith, that the warrant was valid, the facts are to the contrary. Reliance on a warrant cannot be considered objectively reasonable if the warrant is facially invalid, i.e., based on an affidavit so lacking in probable cause as to render belief in its validity unreasonable. *Leon*, 468 U.S. at 923, 104 S.Ct. 3405. For the reasons stated previously, the affidavit used to obtain the seizure warrant in this case was completely lacking in indicia of probable cause. No information in the affidavit established probable cause to believe that any property belonging to defendant would be found at any of the listed locations. No particular property or type of property was described in the affidavit. Any reasonably well-trained law enforcement officer would have known that the affidavit did not satisfy the requirements of the Fourth Amendment because of the constitutional requirement that the property to be seized must be described with particularity. Detective Espy, who submitted this affidavit to the state district court judge, was present at the execution of the warrant at the three locations. He had personal knowledge of the

contents of the affidavit and was aware that it lacked probable cause. He is an experienced narcotics officer in Junction City, Kansas. Considering the totality of the circumstances, the affidavit was so infirm that no reasonably well-trained law enforcement officer should have believed that the execution of such warrant based upon it was constitutionally valid. The deficiencies in the affidavit were so glaring that no reasonably well-trained police officer would have believed that a neutral and detached magistrate would have issued a seizure warrant based on the facts set forth in the affidavit.

The officer swearing to the affidavit knew that the affidavit did not accurately represent the known facts. The officer had previously executed an affidavit on June 30, 1997, for the purpose of obtaining a seizure warrant for defendant's property. The officer knew that property of defendant had already been seized and was the subject of forfeiture proceedings, specifically currency in the amount of $115, jewelry and a pager. The officer knew that defendant's automobile had been seized on October 1, 1997. While the affiant stated that he had seized "Mr. Chandler's vehicle," no further identification of the vehicle, the date, time or place of the seizure was provided. The affidavit did not state the legal basis for the seizure of defendant's vehicle. Yet, he led the magistrate to believe, based on the facts disclosed in the affidavit, that no property had been seized which would be subject to forfeiture and that seizure of assets up to the amount of $12,137 was appropriate. While the officer stated in the affidavit that defendant had been arrested for felony possession of marijuana on October 1, 1997, he did not disclose in the affidavit relevant facts known to him which could have influenced the magistrate concerning the availability of defendant's automobile, then in the possession of law enforcement, for forfeiture. Specifically, the officer did not disclose in the affidavit that although defendant was the driver of the vehicle at the time of the arrest, the arrest was based upon a "flake" of marijuana found on the carpet on the passenger side of the vehicle where a passenger was riding, the passenger then having two outstanding warrants for possession of marijuana. Suppression remains an appropriate remedy when a magistrate is misled by false information knowingly placed in the affidavit. *Id.* at 923, 104 S.Ct. 3405. Failing to include relevant information which consequently leads to a false conclusion is the equivalent of placing false information in the affidavit.

The officer knew, or a reasonably well-trained officer should have known, that the issuance of a seizure warrant was not permitted under applicable forfeiture law. For the reasons set forth above, the legislature has not provided a remedy for forfeiture of substituted assets of a defendant in cases where the property used in facilitating the commission of the offense was not owned by defendant. There are no cases construing any forfeiture statute, including the Kansas Act, which have so held. Further, any reasonably well-trained law enforcement officer would have known that the statute does not permit issuance of a seizure warrant for substituted assets until the question of the exempt status of the property used to facilitate an offense has been judicially determined. The statute is not ambiguous in this regard. The affiant also knew that no property had been specifically identified to be substituted and that none was specified in the affidavit. The affiant knew that the affidavit made no reference to the substituted assets provision of the Kansas Act. Further, the affiant purported to have knowledge of the law concerning substituted asset forfeiture as evidenced by his citation of cases related to same in the June 30, 1997, affidavit submitted to the magistrate for issuance of a seizure warrant.

Any reasonably well-trained law enforcement officer knows that the Fourth Amendment precludes the kind of "exploratory rummaging" proposed by the affidavit, which requested the issuance of a seizure warrant "for the search" of identified properties "to locate items for seizure." Suppression of the evidence herein is not only appropriate, it is mandated in order to curb the abusive and irresponsible disregard for the Fourth Amendment rights of defendant by law enforcement evidenced by the facts of this case.

■■■ An issue not argued by the parties is apparent from the face of the warrant and

the evidence adduced at the suppression hearing. The face of the warrant is directed to "Sheriff of Geary County, Kansas, and/or Junction City Drug Task Force." It was served by officers of the Junction City police department assigned to the Junction City Drug Task Force. A search warrant may be directed either to all law enforcement officers in the state or to specific law enforcement officers. *See* K.S.A. § 22–2505. The seizure warrant in issue was directed specifically to either the Sheriff of Geary County or to members of the Junction City Drug Task Force. There is no evidence that the Sheriff of Geary County was in any way involved in the execution of the warrant. The jurisdiction of city police officers is limited to the city limits of the city employing them, with two exceptions, when in "fresh pursuit" or where a request for assistance has been made by law enforcement officers for another jurisdiction in which the assistance is sought. K.S.A. § 22–2401a(b). Police officers of one city have no authority to execute a search warrant in another city. *State v. Sodders*, 255 Kan. 79, 872 P.2d 736 (1994). The warrant in issue was executed in Ogden, Kansas, a city located in Riley County, Kansas. The evidence established that a Riley County sheriff's deputy was present at the time of execution. Under Kansas law, the Junction City officers had no authority to execute the warrant in Ogden, Kansas. There is no evidence in the record that the Junction City officers were providing assistance at the direction of the Riley County officer. Indeed, such circumstance could not have been the case since the warrant was not, by its express terms, directed to the sheriff of Riley County. The facts of the case establish that the Riley County officers were providing assistance to the Junction City officers who had obtained and were attempting to execute the seizure warrant.[12] Consequently, the officers attempting to execute the warrant at 908 S. Elm in Ogden, Kansas, were without legal authority to execute the seizure warrant in issue. Kansas statutes preclude it. The Supreme Court of Kansas has specifically ruled on these issues. The evidence obtained at the residence in Ogden, Kansas, must be suppressed.

 The government contends that the seizure of cocaine from 908 S. Elm was justified under the "plain view" doctrine. In order for law enforcement officials to seize property pursuant to the "plain view" doctrine, three criteria must be met: (1) the officer must not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the evidence must be in plain view and "its incriminating character" [must be] immediately apparent, and (3) the officer must have a lawful right of access to the object itself. *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). The plain view doctrine is inapplicable to the facts before the court as the criteria of *Horton* are not met.

First, for the reasons previously stated, the officers violated the Fourth Amendment in obtaining the seizure warrant in question. The Act under which the seizure warrant was issued does not provide for the issuance of a seizure warrant at the time requested and under the circumstances of this case. The seizure warrant was obtained on an affidavit which requested an opportunity to engage in an unbridled search of the various properties to locate items for forfeiture. Although the warrant limited the items for which seizure was allowed, the contemplated search to locate the property would have been unlimited. The officers knew that the affidavit did not state probable cause to believe that the itemized property in the seizure warrant would likely be found at the locations where the seizure warrant was to be executed. The officers knew that they had no articulable facts which could be stated in an affidavit to establish that probable cause existed to believe that any property belonging to defendant would be found at any of the identified locations. The officers search of 908 S. Elm was in violation of the Fourth Amendment.

Second, the evidence was not in plain view and its incriminating character was not immediately apparent as required by *Horton*.

12. The civil nature of the forfeiture proceedings does not lead to a different result as the Junction City law enforcement officers had no authority to serve process in Ogden, Kansas and the warrant was not directed to the Sheriff of Riley County. *See* K.S.A. § 19–812.

The cocaine and scales were concealed in a translucent blue plastic Wal–Mart shopping bag placed on the back step at approximately 8:00 p.m. on October 2, 1997. The area was dark at the time. The officer who seized the bag admitted that when he viewed the bag itself, he "couldn't tell for sure what was in there." The officers obtained possession of the bag and saw its contents only after they entered the residence upon seeing that a bag with unknown contents had been placed on the back step. They then retrieved the bag to inspect its contents. The incriminating nature of the bag and its contents was not "immediately apparent," and was not subject to seizure under the "plain view" doctrine.[13]

Seizures under the plain view doctrine are only justified when they meet the probable cause standard and are not accompanied by unlawful trespass. The doctrine merely reflects application of the Fourth Amendment. *Soldal v. Cook County, Illinois et al.*, 506 U.S. 56, 66, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). For the reasons stated herein, the officers were not lawfully on the property in Ogden, Kansas. The requisite probable cause required by the Fourth Amendment is lacking. Therefore, the doctrine does not salvage the unlawful search.

A final issue raised by the government at oral argument is that of consent. The officers contend that Tamika Moore gave them consent to search the residence. However. Detective Espy testified that consent to search the residence was given *after* the drugs had been discovered by police. Further, consent was not given prior to the representation by officers that they were present on the premises with a seizure warrant to search for property of defendant. Entry to the premises was upon execution of the purportedly valid seizure warrant. The government cites no authority for the proposition that a valid consent to search can be obtained when entry to the property is obtained through the execution of a seizure warrant. There was no valid consent to the search in question.

Finally, the seizure and forfeiture of approximately $12,000 of substituted collateral due to the use of a leased vehicle to evidence possession of one $20 rock of "crack" cocaine would likely be found to be an excessive fine in violation of the Eighth Amendment of the Constitution. *United States v. Hosep Krikor Bajakajian*, —— U.S. ——, 118 S.Ct. 2028, 2033–34, 141 L.Ed.2d 314 (1998). When the forfeiture amount is grossly disproportional to the gravity of defendant's offense, it is unconstitutional under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Id.* at 2035–36.

The court recommends that Defendant's Motion to Suppress (doc. 22) be granted.

In accordance with 28 U.S.C. § 636(b)(1), any party objecting to the recommended disposition may serve and file specific written objections to the proposed findings and recommendations, within 10 days after being served with a copy of this Report and Recommendation. If no timely objections are filed, the district judge may accept the recommendation and enter the appropriate order, with no further notice to the parties required. Failure to file objections within the specified time waives the right to appeal a district court order adopting this Report and Recommendation.

Copies of this Report and Recommendation shall be mailed to counsel of record.

IT IS SO ORDERED.

July 22, 1998.

---

**13.** It is noteworthy that the witnesses who saw the bag placed at the back step were a Junction City police officer and a Geary County assistant county attorney, neither of which had independent authority in Riley County. No evidence was presented to establish their right to participate in the execution of the search warrant outside of Junction City and Geary County respectively.